UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK P. DONALDSON,

        Plaintiff,

vs.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
*et al.*,

        Defendants.

_____/

Case No. 1:14-cv-620

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

*Pro se* plaintiff has filed a multi-count amended complaint against defendants United

States Department of Health and Human Services (HHS), United States Department of Agriculture

(USDA),  Michigan Administrative Hearing System (MAHS), Mike Zimmer (Executive Director

of MAHS), Lisa Gigliotti (Division Director of MAHS), the Michigan  Department of Human

Services (MDHS), Maura D. Corrigan (Director of MDHS), the Michigan Department of

Community Health (MDCH), James K. Haveman (Director of MDCH), and John G. Strand (Director

of the Michigan Legislative Council (MLC).  This matter is now before the Court on motions to

dismiss filed by defendants MAHS, Mike Zimmer, Lisa Gigliotti, MDHS, Maura Corrigan, MDCH,

and James Haveman (collectively, the "State Defendants") (docket no. 18), defendant John Strand

(docket no. 20), and defendants HHS and USDA (collectively, the "Federal Defendants") (docket

no. 33).  The Court will also address plaintiff's motion for primary jurisdiction as to Counts VII, IX

and XII (docket no. 25) and his motion to file a third amended complaint (docket no. 81).

I.       **Introduction**

## A.      Overview

The First Amended Complaint is a massive pleading, containing 440 paragraphs of allegations and 13 counts directed against defendants.   The thrust of the First Amended Complaint is that the State of Michigan illegally amended two rules which regulate administrative hearings for applicants and recipients of public assistance, i.e., Michigan Administrative Code Rules 400.907 and 400.908.   As amended, Rule 400.907 requires that, unless prohibited by federal regulation, administrative hearings "shall be conducted with communication equipment," which is defined as telephone, video conferencing, or other electronic media.  Mich. Admin. Code, Rule 400.907.  Rule 400.907 also provides that a person may have an "in-person" hearing only if approved by a managerial-level administrative law judge.  *Id.*  As amended, Rule 400.908 allows a claimant or the claimant's representative to receive notice of a hearing electronically.  Mich. Admin. Code, Rule 400.908.  Plaintiff alleged that these amendments violate federal regulations, his rights under the First Amendment, Fourteenth Amendment and *Goldberg v. Kelly*, 397 U.S. 254 (1970).[1]

## B.      Brief history of the rules at issue

Part 9 of the  Michigan Administrative Code sets forth rules for "Hearings, Appeals and Declaratory Rulings."  Rule 400.907 addresses the "Place of hearing."  Prior to the contested amendment, Rule 400.907 gave claimant for state benefits the option to have a face-to-face hearing:

> A hearing shall be conducted at a reasonable time, date, and place.  A claimant shall have the opportunity to participate in a hearing in the county in which the claimant resides.  A hearing may be conducted by telephone, by other electronic media, or face-to-face.  A face-to-face hearing shall be conducted if a claimant or claimant's representative requests a face-to-face hearing.  A licensing case may be heard in Lansing or Detroit or in a county where the petitioner maintains a place of

[1] In *Goldberg*, the Supreme Court held that "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process."  *Goldberg*, 397 U.S. at  264.

business.

Mich. Admin. Code, R. 400.907 (2013).

The other rule at issue, Rule 400.908, addressed the "Notice of hearing." Prior to the

amendment, Rule 400.908 required that:

> (1) Notice of the time, date, and place of hearing shall be mailed to the claimant, his representative of record, and the county department or state bureau involved at least 10 days before the date of hearing, except when otherwise required by law.

> (2) A notice shall contain the section of the law and rule involved.

Mich. Admin. Code, R. 400.908 (2013).

Plaintiff contacted various state officials and employees while proposed amendments

to these two rules were being drafted. A main component of plaintiff's claim involves the so-called

"plan" outlined in an October 7, 2013 e-mail providing a "Summary of our DHS video conference

hearing meeting" which defendant Gigliotti sent to plaintiff. The e-mail discussed "the ability to use

videoconferencing in place of in-person, face-to face hearings for DHS hearings." *See* Gigliotti e-

mail (docket no. 9-1 at p. ID# 164). In her e-mail, Gigliotti summarized the "Rule" requirements

for the hearings as follows:

> 45 CFR 205.10 (pertaining to public assistance programs) states in relevant part:

> > Hearing procedures shall be issued and publicized by the State agency. Such procedures *shall* provide *for a face-to-face* hearing *or*, at State option, *a hearing by telephone when the applicant or recipient also agrees*. . . , [45 CFR 205.10(a)(2). (Emphasis added.)]

> Mich Admin Code, R400.907 . . .  provides in part:

> > A hearing shall be conducted at a reasonable time, date, and place. A claimant shall have the opportunity to participate in a hearing in the county in which the claimant resides. A hearing *may* be conducted by

3

> *telephone*, by *other electronic media*, or *face-to-face*.  A face-to-face
> hearing *shall* be conducted if a claimant or claimant's representative
> requests a face-to-face hearing.  .   .   .  [Emphasis added.]

*Id.*

The e-mail stated that "MAHS submitted a rules change to allow videoconferencing

for face-to-face hearings," explaining that:

> Only the TANF [Temporary Assistance for Needy Families] CFR has express
> provisions requiring "face-to-face".  There is greater likelihood of making a pilot
> transition to videoconference in MA [Medicare Advantage] eligibility cases.  (Not
> favorable to pilot with FNS [Food and Nutrition Service] at this time.)  In addition,
> the federal social security disability hearings are held by videoconference and
> therefore MA eligibility is not as disagreeable.

*Id.*

The e-mail also referred to a "Plan" for implementing the video conference hearings

consisting of two parts:

> 1) Abuse of process: Start with videoconference option for those
> claimants and appellants who have a history of "abuse of process"
> MAHS will document the abuse of process first, and then
> communicate in writing that a fair hearing will be conducted, but
> because of precious [sic] abuses of the hearings process, will conduct
> the hearing by videoconference.
>
> 2) For MA eligibility only, pilot the videoconference fair hearing for
> those claimants requesting a "face-to-face" hearing.

*Id.*

Ultimately, amendments to the rules were adopted. Effective June 5, 2014, Rule

400.907 was renamed "Location of hearing; hearing conducted with communication equipment,"

and amended to read as follows:

> (1) A hearing shall be conducted at a reasonable time, date, and location.
> Unless prohibited by federal regulation, a hearing shall be conducted with

4

communication equipment.  For the purposes of this rule, a hearing conducted with communication equipment shall mean a hearing held by telephone, video conferencing, or by other electronic media.

(2) For a hearing conducted with communication equipment, both the claimant and the department of human services shall submit all documentary evidence to be considered by an administrative law judge to the Lansing office of the Michigan administrative hearing system no later than 10 days before the scheduled hearing date.  For good cause shown, an administrative law judge may permit additional evidence to be submitted, but may decline to accept additional evidence at or following the hearing.

(3) A party may request an in-person hearing in writing at least 14 days before the scheduled hearing.  If approved by a managerial-level administrative law judge, the hearing shall be converted into an in-person hearing and scheduled for a reasonable time, date, and place.

Mich. Admin. Code, R. 400.907 (eff. June 5, 2014).

Also effective June 5, 2014, Rule 400.908 was amended to read as follows:

(1) Notice of the time, date, and place of hearing shall be mailed to the claimant and his representative of record, and shall be sent electronically to the county department or state bureau involved at least 10 days before the date of hearing, except when otherwise required by law.  At the election of the claimant or his or her representative of record, service may be made electronically.

(2) A notice shall contain the section of the law and rule involved.

Mich. Admin. Code, R. 400.908 (eff. June 15, 2014).

### C.   Plaintiff's Amended Complaint

Plaintiff's amended complaint includes 11 counts challenging the new rules: (I) "Defendants and/or rules involving evidence violate due process rights, federal regulations, and/or Goldberg v. Kelly"; (II) "Defendants new rules, plan, and/or policies involving hearings violate due process rights, equal protection clause, 45 CFR 205.10(a)(2) and/or Goldberg v. Kelly"; (III) "Defendants and/or rules involving in-person hearings violate due process rights, equal protection

5

clause, 45 CFR 205(10)(a)(2) and/or Goldberg v. Kelly"; (IV) "Defendants and/or rules violate constitutional due process rights and/or Goldberg v. Kelly"; (V) "Defendants rules, plan and/or policies violated due process rights, equal protection clause, and/or federal regulation(s)"; (VI) "Defendants, rules, and/or plan violated CMS joint agreement, state plan, 1915(c) home and community based services, and/or federal regulations"; (VII) "Defendants, rules, and/or plan violated rulemaking authority CMS joint agreement, state plan, 1915(c) home and community based services waiver, and/or federal regulations"; (VIII) "Defendants and/or rules violate due process rights, federal regulations and/or Goldberg v. Kelly"; (IX) "Primary jurisdiction involving HHS and/or USDA FNS"; (XI) "Defendants misleading and/or false practices, information, data, and/or analytics"; and (XII) "Defendants have violated rulemaking authority under federal regulations, Michigan statutes, and/or plaintiff's due process rights secured under the 14th Amendment, and/or Goldberg v. Kelly."  Amend. Compl.

Plaintiff's Count XIII, while directed against defendants Gigliotti, Zimmer, Corrigan and Haveman, also challenged the validity of new regulations, stating that these four defendants "deprived and/or violated plaintiff's constitutional rights under 42 U.S.C. § 1983." *Id.* Specifically, plaintiff alleged that these defendants violated his "due process and/or equal protection rights under the Fourteenth Amendment" when they failed to withdraw the new regulations. *Id.* at ¶¶ 431-40.

Finally, Count X is directed at defendant Strand, stating that "Strand deprived and/or violated plaintiff's constitutional rights under 42 U.S.C. 1983." *Id.* Specifically, plaintiff alleged that defendant Strand violated "his rights under the First Amendment and/or the due process rights under the Fourteenth Amendment." *Id.* at ¶ 373.

D.      **Plaintiff's first motion for a temporary restraining**

order (TRO)

On July 23, 2014, the Court denied plaintiff's first motion for a TRO, because

plaintiff had not suffered any injury due to the amendments:

> Here, plaintiff does not allege any facts to demonstrate that he will suffer any actual, imminent, certain or immediate harm from the recent amendments to Rules 400.907 and 400.908.  In his amended complaint, plaintiff has alleged that he is currently receiving a number of state benefits:
>
>> The plaintiff, Mark. P. Donaldson, is an U.S. citizen who resides in Antrim County, is a claimant who receives public assistance, food stamps, through MDHS [Michigan Department of Human Services], the Healthy Michigan Plan through MDCH [Michigan Department of Community Mental Health], and Mr. Donaldson is named as a durable power of attorney, (recognized by the Michigan 46th Circuit Court), for a woman who receives MI-Choice benefits through MDCH.
>
> Amend. Compl. at ¶ 11 (docket no. 9).  Plaintiff does not allege that any of these benefits are being withdrawn or subject to an administrative appeal involving the amended regulations.  At most, plaintiff has pointed out a theoretical harm that he may suffer at some indefinite point in the future if he is required to participate in a hearing with electronic communication equipment.  *See, e.g.*, Amend. Compl. at ¶ 247 ("The plaintiff in addition to claimants [sic] do not have [sic] the background, education, training, skills, expertise, and/or funds when it comes to understanding and/or the use of video conferencing equipment, computers, and/or other associated electronic communications equipment that is associated with video conferencing").  Plaintiff's claim that he may suffer a theoretical future injury does not demonstrate irreparable harm sufficient to support issuance of a TRO.

Order (docket no. 17) (internal citations omitted).

After the Court denied plaintiff's motion for a TRO, all defendants moved to dismiss

plaintiff's amended complaint.  In response to these motions, plaintiff asked the Court apply the

doctrine of primary jurisdiction with respect to some counts alleged in the amended complaint.[2]

---

[2] "The doctrine of primary jurisdiction allows courts to refer a matter to the relevant agency 'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]'"  *Charvat v. EchoStar Satellite,*

Then, plaintiff apparently abandoned his motion for primary jurisdiction by seeking leave to file a second amended complaint and a third amended complaint.[3]

II.    **Defendants' motions to dismiss**

A.    **The State Defendants and Federal Defendants'
motions to dismiss**

1.    **Legal standard**

The State Defendants and Federal Defendants contend that plaintiff does not have standing to bring his claims against them and seek to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) (where a plaintiff does not have standing, the Court should grant a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction).  Defendants' motions present a facial attack on subject matter jurisdiction, contending that even if plaintiff's allegations are true, those allegations fail to demonstrate that plaintiff has standing to file this action against them.  *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ("Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  A *facial* attack is a challenge to the sufficiency of the pleading itself.") (emphasis in original).  When a defendant seeks dismissal on this basis, "the court must take the material allegations of the [complaint] as true and construed in the light most favorable to the nonmoving party."  *Id.*, citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974).

_____

*LLC*,  630 F.3d 459, 466 (6th Cir. 2010), quoting *United States v. Western Pacific Railroad Company*, 352 U.S. 59, 63-64 (1956).

[3] The court notes that plaintiff moved for leave to file a third amended complaint after defendants opposed his motion for leave to file a second amended complaint.

"Standing is 'the threshold question in every federal case.'"   *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999), quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Article III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989); *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *see* U.S. Const. art. III § 2." *Murray v. United States Dept. of Treasury,* 681 F.3d 744, 748 (6th Cir. 2012).   "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'"   *Coyne*, 183 F.3d at 494, quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982).   It is the "cases and controversies" requirement in Article III which prevents the United States Courts from becoming "judicial versions of college debating forums."   *See Valley Forge Christian College*, 454 U.S. at 473.

The Supreme Court has set forth three requirements for standing:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent. . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Rosen v. Tennessee Commissioner of Finance and Admin.*, 288 F.3d 918, 927-28 (6th Cir. 2002), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).   Thus, "[t]o satisfy Article III's standing requirements, a plaintiff must plead a concrete, particularized, and imminent injury in fact caused by the defendant that a favorable judicial outcome

would likely remedy." *Kroll v. White Lake Ambulance Authority*, 691 F.3d 809, 813 (6th Cir.2012). The burden of establishing standing is on the party seeking federal court action, who must "clearly and specifically set forth facts sufficient to satisfy those Article III standing requirements." *Rosen*, 288 F.3d at 928 (internal quotation marks omitted).

Finally, it is well established that *pro se* complaints, like the one filed in this action, are held to "less stringent standards than formal pleadings drafted by lawyers." *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the duty to be "less stringent" with *pro se* complaints does not require this Court to conjure up unpled allegations.  *McDonald v. Hall*, 610 F.2d 16, 19  (lst Cir. l979).

### 2.    Discussion

In denying plaintiff's motion for a TRO, the Court found that plaintiff failed to allege that he suffered any harm from the amended regulations.  While plaintiff received some government benefits, he did not allege that any of his benefits are being withdrawn or subject to an administrative appeal involving the amended regulations.   At most, plaintiff pointed out a theoretical harm that he may suffer at some indefinite point in the future if he is required to participate in a hearing with electronic communication equipment.  *See*, *e.g.*, Amend. Compl. at ¶ 247.  This allegation of a theoretical, speculative injury is insufficient to establish standing.  "It is clearly established that '[a]llegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be certainly impending to constitute injury in fact.'"  *Rosen*, 288 F.3d at 929, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotations omitted).  Having alleged neither an injury nor a threatened injury which is "certainly impending,"  plaintiff has failed to meet the injury in fact requirement for standing to bring this federal action.  In short, although plaintiff is a recipient

10

of government benefits, he is not affected by the proposed regulatory amendments, and cannot use the judicial process to advance his personal viewpoint and challenge the substance of those amendments. In short, plaintiff cannot circumvent the standing requirement and transform this federal lawsuit into "a vehicle for the vindication of his interests as a 'concerned bystander.'" *See Valley Forge Christian College*, 454 U.S. at 473. Accordingly, the State Defendants and Federal Defendants' motions to dismiss (docket nos. 18 and 33) should be granted and plaintiff's motion for primary jurisdiction (docket no. 25) should be denied as moot.

### B. Defendant Strand

### 1. Legal standard

Plaintiff's allegations against defendant Strand raise claims independent of his challenge to the amended regulations. In Count X, plaintiff seeks relief against Strand pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Plaintiff's complaint seeks relief for retaliation in violation of the First Amendment "and/or" his due process rights under the Fourteenth Amendment. *See* Amend. Compl. at ¶¶ 373-91 (docket no. 9 at pp. ID## 144-49).

Defendant Strand seeks to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed

for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds

upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim
> to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.  The plausibility standard is not akin
> to a probability requirement, but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.  Where a complaint pleads facts that are merely
> consistent with a defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most

favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  In addition, "[w]hen a court is presented with a Rule

12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records,

items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so

long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett*

*v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

## 2.      First Amendment retaliation

In his response, Strand provided general background information on the structure of

the MCL,  explaining that as the Director of the MLC, he oversees ten agencies including the Joint

Committee on Administrative Rules (JCAR), a statutorily-created bipartisan legislative committee

responsible for the legislative oversight of administrative rules proposed by state agencies whose

non-partisan staff is responsible for processing rules transmitted to the committee by state agencies,

including scheduling committee hearings at the direction of the chair, providing the members of the

Committee with the background and legal analysis of the rules, and reviewing proposed legislation to determine whether rulemaking authority is, or should be, necessary to carry out the legislative intent of the proposed legislation. *See* Strand Brief (docket no. 21 at p. ID#310).[4]

In his supporting brief, Strand fairly summarized plaintiff's allegations against him as follows:

> Donaldson alleges that he had numerous conversations over several months with JCAR counsel Marge Martin regarding JCAR's position on the proposed rules. (Am. Complt., R. #9, ¶¶163-164.)

> JCAR -- made up of five members of the House and five members of the Senate -- may file objections to proposed rules resulting in bills being introduced into both the House and Senate to avoid implementation of the rule. Martin is general counsel to the JCAR. She is not a legislator, a member of the committee, or the vehicle through which the public participates in the legislative process. (*See e.g.* Am. Complt., R. #9, ¶180.)

> Donaldson alleges that he developed a courteous relationship with Martin between January 2014 and May 2014 via telephone and email contact and Martin would answer his questions and provide him with information regarding the proposed amendments to the hearing rules. (Am. Complt., R. #9, ¶178.). Donaldson alleges that communication with Martin is protected conduct for the purpose of a First Amendment retaliation claim. (Am. Complt., R. #9, ¶204.)

> The basis of Donaldson's complaint against Strand is that on May 29, 2014, Strand interrupted that relationship with Martin and refused to allow Donaldson to continue communicating with her directly. (Am. Complt., R. #9, ¶204.) Donaldson alleges that Strand's action was motivated by Donaldson's communication with Martin, his calls on May 28-29, 2014 seeking information about the status of the rules, his filing "requests" with JCAR about the rules, his statements to Martin about lobbyists becoming involved over Donaldson's requests to JCAR, communication with Martin about JCAR's agenda, and his requests to Martin about dates an agency could submit rules and his comment that he would have to file a lawsuit against the agencies involved with the rules. (Am. Complt., R. #9, ¶¶205-212.)

*        *        *

---

[4] The Court notes that defendant Strand's brief contains information provided by the State of Michigan on the website http://council.legislature.mi.gov/CouncilAdministrator/jcar.

Plaintiff alleges that he called on both May 28th and 29th to find out if JCAR filed an objection to the proposed amendments or if the proposed rules were withdrawn. (Am. Complt., R. #9, ¶¶176-177, ¶181.) He was informed on May 28th that Martin was not there and that Martin would know the answers to the questions. (Am. Complt., R. #9, ¶¶177, 181.)

The following morning, Donaldson called JCAR repeatedly again asking if JCAR had filed objections or the rules were withdrawn. (Am. Complt., R. #9, ¶¶182-184.) He reports that he was informed on the second or third phone call that a meeting had been held the day before and that Donaldson could no longer speak with Martin. (Am. Complt., R. #9, ¶182.) Donaldson alleges the person answering the phone ended the conversation. (Am. Complt., R. #9, ¶184.) Donaldson called back. (Am. Complt., R. #9, ¶184.) This time he was transferred to the Director, John Strand, who allegedly informed Donaldson that he intimidated the agency's staff and wasted their time and that he was a persona non grata [FN 2]. (Am. Complt., R. #9, ¶¶184,188.)

> [FN 2]  The term is defined as: 1. an unacceptable or unwelcome person, or 2. (Government, Politics & Diplomacy) a diplomatic or consular officer who is not acceptable to the government or sovereign to whom he or she is accredited.  The American Heritage Dictionary of the English Language (2009).

Donaldson then submitted requests under the Freedom of Information Act, Mich. Comp. Laws § 15.231 *et seq.*, requesting information about the telephone call he had with Strand and the meeting allegedly held on May 28th about Donaldson. (Am. Complt., R. #9, ¶191.) While the complaint does not specifically state, it infers that the answer to the request was that responsive documents did not exist. (Am. Complt., R. #9, ¶191.)

Strand Brief at pp. ID## 311-13.

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Defendant Strand contends that plaintiff's retaliation claim fails because plaintiff did not engage in the requisite protected conduct. In setting

14

forth his cause of action in Count X, plaintiff identified his protected conduct as follows:

> The plaintiff was engaged in protected conduct under the First Amendment which was communicating with Marge Martin of JCAR on several occasions since January of 2014 and filing request, (documents seeking objections be done by JCAR legislative committee members), involving the "Rules" via emails and attachments what were sent to Marge Martin of JCAR in which Marge Martin would then forward the plaintiff's requests to JCAR legislative committee members and associated personnel all of which was done by the plaintiff based upon Marge Martin's verbal communications and instructions given to the plaintiff over the phone.

Amend. Compl. at ¶ 383. While plaintiff had an informal arrangement with Ms. Martin, he knew that she was not responsible for accepting his comments or presenting those comments to JCAR. See Amend. Compl. at ¶ 180 ("Ms. Martin explained to the plaintiff that she did not have the responsibility nor was she involved with reading the plaintiff's requests to JCAR members or making any determination, research, or further inquiry into my JCAR filings that were sent to JCAR legislative members").

Nevertheless, plaintiff alleged that defendant Strand interfered with his relationship with Ms. Martin, claiming that Strand engaged in adverse actions which included use of the word "intimidate," and the use of that particular word "deterred and/or chilled the plaintiff from continuing to engage in speech, communications, and/or conduct with public employee Marge Martin." *Id.* at ¶ 384. While plaintiff alleged that Strand engaged in other adverse actions which affected his free speech, plaintiff does not identify these actions. *Id.*

Based on the allegations set forth in the amended complaint, plaintiff's interaction with Martin consisted of engaging in telephone conversations in which he informally asked a state government employee for information regarding JCAR's review of proposed amendments to agency regulations. Such informal interaction with a state employee is not protected conduct under the First

Amendment.  As a general rule, "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 283 (1984).  "Absent statutory restrictions, the state must be free to consult or not to consult whomever it pleases." *Id.* at 285.  Thus, "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.* at 288.  In the context of this lawsuit, plaintiff did not have a First Amendment right to make unlimited telephone calls to Ms. Martin for the purpose of expressing his viewpoints on the proposed amendments.  *See id.*  Because plaintiff did not engage in protected conduct, he cannot maintain a cause of action for retaliation.  Accordingly, plaintiff's retaliation claim against defendant Strand should be dismissed.

### 3.    Fourteenth Amendment

Plaintiff also alleged that defendant Strand violated his Fourteenth Amendment right to due process, stating:

> Defendant Strand violated 42 U.S.C. §1983 and/or deprived the plaintiff of his due process rights under the Fourteenth Amendment of the Constitution but [sic] not allowing the plaintiff to present evidence, to confront persons making allegations including but not just limited to the plaintiff allegedly "intimidating" a public employee, to refute allegations, to contest and/or appeal Mr. Strand's adverse actions made directly to and against the plaintiff on May 29,2014, and/or contest and/or appeal Mr. Strand's determinations made on May 28,2014, May 29,2014, and/or involving the May 28, 2014 meeting.

Amend. Compl. at ¶ 388.

"To establish a procedural due process claim, a plaintiff must show (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving

him of the . . . interest." *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (internal quotation marks omitted). "The Supreme Court has described 'the root requirement' of the Due Process Clause as notice and an opportunity to be heard before one is deprived of a significant property interest." *Wedgewood Ltd. Partnership I v. Township Of Liberty, Ohio*, 610 F.3d 340, 354 (6th Cir. 2010), quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985).

Here, plaintiff alleged that he communicated with Ms. Martin in an attempt to obtain information regarding proposed regulations. While Ms. Martin responded to plaintiff's informal inquiries, this interaction did not create a due process right in favor of plaintiff for unlimited access to Ms. Martin for the purpose of expressing his viewpoint on the proposed amendments to Rules 400.907 and 400.908. "Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard." *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir.1991). "Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption." *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445-46 (1915). "The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. . . . There must be a limit to individual argument in such matters if government is to go on." *Id.*

For these reasons, defendant Strand's alleged comments regarding plaintiff's telephone calls to JCAR did not implicate plaintiff's due process rights. Accordingly, plaintiff's due process claim against defendant Strand should be dismissed.

### III.   Plaintiff's Third Amended Complaint

Plaintiff attempts to salvage this action by moving to file a proposed Third Amended

Complaint (*see* docket no. 81-1).  Although Fed. R. Civ. P. 15(a)(2) encourages courts to grant leave to amend when justice so requires, "courts need not give leave to amend when doing so would be futile."  *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014).  Amending a pleading would be futile "if a proposed amendment would not survive a motion to dismiss."  *Id.* Here, plaintiff's proposed third amended complaint  fails to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678.

   The proposed Third Amended Complaint consists of 760 paragraphs of allegations which re-frame his legal claims into 18 new Counts.  *See* Proposed Third Amend. Compl. (docket no. 81-1); Exhibits (docket no. 81-2).  The proposed Third Amended Complaint expands the scope of the lawsuit by challenging the authority of state agencies to promulgate rules, adding claims related to the HHS Insurance Marketplace, restating the "telephone call" claim against defendant Strand into four counts, expanding his personal claims against defendants Gigliotti, Zimmer, Corrigan, and Haveman,  and seeking multiple writs of mandamus against federal and state employees.

   The new 18 counts are as follows:  (I) "MDCH and/or MDHS violated rule-making authority and/or MAHS cannot promulgate and/or adopt rules"; (II) "Defendants Gigliotti, Zimmer, Corrigan, and/or Haveman hearing system [sic] violates due process standards set forth in Goldberg v. Kelly";  (III) "Defendants Gigliotti, Zimmer, Corrigan, and/or Haveman hearing system [sic] violates due process standards set forth in 42 CFR part 431 subpart E and/or 45 CFR 205.10(a)(2)"; (IV) "Defendants Gigliotti, Zimmer, Corrigan, and/or Haveman are violating federally approved agreement(s)"; (V) "Defendants Gigliotti, Zimmer, Corrigan, and/or Haveman rules [sic]  violate Michigan [sic] Federal regulations, Due Process Clause and/or Equal Protection Clause"; (VI) "U.S.

Defendants acknowledge statutory HHS authority and thus Federal Question and/or primary jurisdiction"; (VII) "Primary jurisdiction involving HHS and/or USDA"; (VIII) "Mandamus involving HHS and/or USDA"; (IX) (II) "Defendants' Gigliotti, Zimmer, Corrigan, and/or Haveman 'rules,' deprive and/or violate the plaintiff and/or claimants Fourteenth Amendment due process rights"; (X) "Defendant John Strand individually deprived and/or violated plaintiff's First Amendment rights under 42 U.S.C. 1983"; (XI) "Defendant John Strand supervisory [sic] deprived and/or violated plaintiff's First Amendment rights under 42 U.S.C. 1983"; (XII) "Defendant John Strand individually deprived and/or violated plaintiff's Fourteenth Amendment rights under 42 U.S.C. 1983"; (XIII) "Defendant John Strand supervisory [sic] deprived and/or violated plaintiff's Fourteenth Amendment rights under 42 U.S.C. 1983"; (XIV) "Defendants' Gigliotti, Zimmer, Corrigan, and/or Haveman refuse to provide and/or respond to HHS/CMS and collect and use disparaging history, data, and/or analytics pertaining tho the plaintiff and/or claimants based upon the 'rules', the 'plan', 'analytics', and/or 'abuse of process'"; (XV) "Defendants' Gigliotti, Zimmer, Corrigan, and/or Haveman 'plan' [sic] and/or 'abuse of process' violate and/or deprive the plaintiff, public, and/or claimants First Amendment rights under 42 U.S.C. 1983"; (XVI) "Defendants' Gigliotti, Zimmer, Corrigan, and/or Haveman 'plan' [sic] and/or 'abuse of process' violate and/or deprive the plaintiff and/or claimants Fourteenth Amendment due process and/or equal protection rights under 42 U.S.C. 1983"; (XVII) "Mandamus involving HHS and/or Insurance Marketplace"; and (XVIII) "The 'plan' and/or the 'abuse of process' violate the MI APA [Administrative Procesures Act]."  Proposed Third Amend. Compl.

          In his motion for leave to file the Third Amended Complaint, plaintiff also states that he is adding three defendants, "Kevin Counihan, (HHS Insurance Marketplace CEO), Sylvia Burwell

(HHS head), and/or Marilyn Tavenner, (HHS CMS Head)." Motion to amend (docket no. 81 at p. ID# 890). Despite plaintiff's representations in his motion, the proposed Third Amended Complaint does not name these three individuals as parties nor list them in the case caption. Yet, at the same time, plaintiff's newly proposed Count XVII asks that the Court issue 10 writs of mandamus and 5 injunctions against these three individuals. *See* Proposed Third Amended Compl. at ¶¶ 13-21, 738-54, Ai - Aw (docket no. 81-1 at pp. ID## 897-98, 1023-25, 1031-33). In summary, plaintiff's proposed Third Amended Complaint has re-framed the lawsuit by adding new defendants, new claims, and new requests for relief, many of which are unrelated to his amended complaint. *Compare* Amend. Compl. (docket no. 9 at pp. ID## 83-159) with Proposed Third Amend. Compl. (docket no. 81-1 at pp. ID## 893-1033).

Despite this new and expanded packaging of plaintiff's grievances, plaintiff's proposed Third Amended Complaint suffers from the same basic flaw as his amended complaint, i.e., plaintiff does not allege that he suffered any injury due to the regulatory amendments which form the basis of his claims. Plaintiff attempts to avoid the standing issue in the proposed Third Amended Complaint by expanding the scope of his lawsuit to include an allegation that he requested a state agency hearing on a dispute involving insurance with the Appeals Marketplace Center. *See* Proposed Third Amended Complaint at ¶¶ 23-24 (docket no. 81-1 at p. ID# 899). In what appears to be an attempt to manufacture standing to pursue this litigation, plaintiff's proposed Third Amended Complaint includes a copy of a Request for Hearing directed the MAHS, which he dated November 8, 2014 (nearly five months after filing his original complaint and only two days before filing the proposed Third Amended Complaint). *See* Request for Hearing (docket no. 81-2 at p. ID# 1086). Plaintiff had no standing to challenge the amended regulations when he filed this action. His

20

attempt to create standing is futile and his motion to file the proposd Third Amended Complaint should be denied on that ground.

Finally, plaintiff's claims alleged against defendant Strand in the proposed Third Amended Complaint are based upon the same occurrence as alleged in Count X of his amended complaint.  *See* Third Amend. Compl. at ¶¶ 627-46 (docket no. 81-1 at pp. ID## 1002-16).  Plaintiff's most recent iteration of his claims against defendant Strand suffers from the same flaws as his amended complaint, i.e., plaintiff does not allege that he engaged in conduct protected by the First Amendment or that he was deprived of a life, liberty or property interest protected by the Due Process Clause.  Accordingly, plaintiff's motion for leave to file the proposed Third Amended Complaint should be denied on this ground as well.

## IV.    RECOMMENDATION

For these reasons, I recommend that defendants' motions to dismiss (docket nos. 18, 20 and 33) be **GRANTED**, that plaintiff's motions for primary jurisdiction (docket no. 25) and to file a third amended complaint (docket no. 81) be **DENIED**, and that this action be **DISMISSED**.


Entered: March 16, 2015                    /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).